## Cochran *against* Perry.

Partnership by written articles: the act by which the plaintiff was alleged to have retired, and that by which the defendants were alleged to have continued the firm, was reduced to writing: parol proof is inadmissible to show that the defendants only were partners when the plaintiff performed services.

A partnership is dissolved when one of the partners sells his share to a stranger or one of the firm, unless otherwise provided by agreement.

Where articles of partnership provided for the transfer of shares by members, subject to restrictions, that a shareholder, after such transfer, should cease to be a member, that the company should keep books, and the persons becoming members by transfer on the books should be entitled to receive a certificate in a particular form, the plaintiff executed an agreement to transfer, not entered on the books, to two of his copartners. *Held*, that this was either a present transfer, which dissolved the partnership, or an executory agreement, which left him standing as a member.

A subsequent ratification of a transfer by the other partner on a condition not performed makes no difference in the relations of the partners towards each other.

After a transfer not completed, no action lies by the party transferring against the other partners, but account render.

And to make such ratification binding, all the partners must join in it.

THIS case came up on exceptions to the opinion of Mr Justice Rogers, before whom it was tried on the 28th December 1843,

[Cochran v. Perry.]

and who directed a nonsuit. It was an action brought in the Supreme Court by Richard Cochran against William Perry, Andrew Cochran, John D. Beers, and Gates Wilcox, late trading as the Williamsport and Philadelphia Lumber Company. Perry alone was served with process, and appeared and pleaded. The rest were returned not summoned. The plaintiff's demand was for services rendered to the defendants. After reading several depositions, he offered Andrew Cochran, one of the defendants not summoned (and who was willing to testify), as a witness to prove the partnership of the defendants. The defendants objected to his competency. The court sustained the objection, and the plaintiff excepted.

The plaintiff then gave in evidence articles of agreement, dated 31st May 1842, between William Perry, John D. Beers and Andrew Cochran respectively, reciting that these parties, together with Richard Cochran and Gates Wilcox, entered, on the 19th November, 1839, into articles of copartnership, under the style and title of the Williamsport and Philadelphia Lumber Company, a copy of which was annexed (marked A), and the whole of the beneficial interest in the property of the company had become vested in the parties to these presents and the said Gates Wilcox, although some of the shares of the stock of the company were nominally vested in others; and that these parties and Gates Wilcox, on the 25th October 1841 (the whole of the stock really representing an interest being then vested in them), entered into an agreement in writing, as per copy marked (B), for the sale of the real estate of the association; that a sale took place on the 24th November 1841, and the whole was purchased by the parties, except two lots, as appeared by schedule (C). That they were in debt; that the interests of the parties and of Gates Wilcox were represented by shares of stock, viz: Wm. Perry, 310 shares; John D. Beers, 208 shares; Andrew Cochran, 315 shares, and Gates Wilcox 167 shares—total, 1000 shares—the whole amount of stock representing the whole property of the association. It then recites the means applicable to paying debts, consisting, first, of personal estate, and, secondly, proceeds of sale of real estate; therefore, for the purpose of finally dissolving the concern, and winding up its affairs, and producing means to pay debts, &c., it was agreed that Wm. Perry should purchase and take a certain number of acres at certain prices, John D. Beers a certain other number, Andrew Cochran a certain other number, and conveyances should be mutually made. That Gates Wilcox might become a party to these articles at any time, expressing his assent to them under his hand and seal, and thereupon he should be considered a purchaser, under these articles, of the two lots, &c.; and all the covenants should be construed to extend to his purchase, and he considered as coming in under and making himself subject and liable equally with the other parties. And it was further agreed that the said association be, and is from

henceforth, dissolved, except so far as joint action is necessary to the winding up and settling its concerns; and for that purpose the parties were to sell the lumber and convert logs into lumber, the residue of debts not thus provided for to be assessed on the purchasers of the real estate, in the ratio of stock, &c., to be secured by bond and mortgage. In conclusion it recites that it is assumed that Gates Wilcox owns the shares standing in the names of G. Jones and G. Griffin, and that Andrew Cochran owns the shares standing in the name of Richard Cochran, and that the shares standing in the name of James Armstrong are merely nominal, he having no interest therein; and that stock thus held should be transferred to the parties in the books of the company.

The articles of association marked (A), above referred to, were made the 19th November 1839, between Wm. Perry, Andrew Cochran, J. D. Beers, Richard Cochran, and Gates Wilcox. It was therein recited that they had associated with the object of forming a joint stock company, for the purpose of purchasing timber and timber lands, and mill-seats, and conducting the lumber business in Pennsylvania. It was agreed the estate, real and personal, should be vested in William Perry and Gates Wilcox, in trust for the copartners, their heirs, successors and assigns, in the manner thereinafter described, they to make a declaration of trust. Various articles were then prescribed: the name was to be the Williamsport and Philadelphia Lumber Company; the copartnership was to consist of the parties, and such other person or persons as might become members thereof in the manner thereinafter provided. The capital stock was to consist of the estate real and personal, valued at $337,000.

Fourth. The capital stock of said company or copartnership shall be divided into fifteen hundred shares, valued at one hundred dollars each share, which shares shall be represented by certificates to be issued as hereinafter provided, certifying that the holder thereof is entitled to one or more shares, as the case may be, in the capital stock of said company or association, said shares to be transferable on the books of the company, by the holders thereof in person, or by power of attorney as hereafter provided.

Fifth. Any person becoming the owner or holder of one or more shares, as aforesaid, shall, from and thereafter, be a member of said company, and entitled to all the privileges of membership as such, as fully as any of the parties hereto are or may be.

Sixth. Any of the parties hereto, or any person or persons hereafter becoming members of said company, may, by person or power of attorney, transfer to such other person or persons as he or they may choose, subject to the restrictions hereinafter mentioned, all or any of the shares aforesaid to which he or they may be entitled; but on the transfer aforesaid of all such share or shares to which he or they may be entitled, such person or per-

sons shall cease to be, from and thereafter, a member of said company.

Fourteenth. All persons becoming shareholders in said company by transfer on the books as aforesaid, shall be entitled to receive a certificate or certificates signed by the president, who shall be appointed by said directors from among their own body, and by the secretary, which certificates shall be in the form following: to wit—

　　" Williamsport and Philadelphia Lumber Company.

　　" No　　　　　　　　　　　　　　Shares $100 each.

This is to certify that　　　　　　　is proprietor of　　　shares of the capital stock and beneficial interests of the Williamsport and Philadelphia Lumber Company, created and acquired in pursuance of the articles of association constituting said company. Each share is of the par value of one hundred dollars, and is clear of all other incumbrance agreeably to the articles of association, and is only transferable on the books of the company and by surrender of this certificate.

" Philadelphia,　　　18　　⎧ Trustees. ⎫
　　　　　　　　　　　　　⎨ A. B. ⎬
"　　　　　　　Sec'y. ⎩ C. D. ⎭　　　　　　　Pres't"

2. The plaintiff then offered Andrew Cochran as a witness to prove that the plaintiff had ceased to be a member of the said company before the period at which the cause of the present action arose. The defendants objected to his competency: the court rejected the witness and sealed another bill of exception.

3. The plaintiff then offered Andrew Cochran as a witness to prove the handwriting of the parties to an agreement dated January 31st 1840, between Cochran, and Perry, and the plaintiff, Richard Cochran, for the sale by the plaintiff of $12,000 worth of stock in said company, in order to show that the plaintiff was not a member of said company when the cause of action accrued: the defendants, however, again objected to his competency; the court sustained the objection and sealed a bill of exceptions.

The court entered a nonsuit and the plaintiff excepted.

*M'Call*, for plaintiff in error.
*Miller*, contra.

The opinion of the Court was delivered by

Gibson, C. J.—It is unnecessary to consider the bills of exceptions to evidence, as the testimony proposed was clearly inadmissible to vary or contradict the written evidence on which the relation of the parties depended. They entered into partnership by written articles; and the act by which the plaintiff is alleged to have retired, as well as the act by which the defendants are

[Cochran v. Perry.]

alleged to have continued the firm without him, was . reduced to writing; consequently, to have admitted a witness to establish the existence of exclusive partnership between the defendants when the services were rendered, would have allowed the legal effect of the documents to be controlled by parol proof. As much of the plaintiff's evidence as was competent, then, being before the jury, the further question was on its sufficiency to make out a case.

The action was for services to a firm, of which the plaintiff was, at one time, confessedly a member; and it was necessary for him to show not only that he had retired from it in order to avoid an objection to the form of the action, but that the defendants were partners or joint contractors when the services were rendered, in order to entitle him to recover, on the merits. It is clear that a partner cannot, consistently with a continuance of the partnership, retire from the firm, or introduce another into it, without a provision for it in the articles, or at least without subsequent ratification by all the partners. The contract of partnership is founded in personal confidence reposed by the partners in each other, which they may be unwilling to repose in a substitute; and it is for this reason that an involuntary transfer by judicial sale of a partner's share in the concern, has been held to dissolve it. Why should not a voluntary sale of it have the same effect? It has been held that a partner cannot transmit his capacity to act as such, by will or intestacy; and an act of bankruptcy is an immediate dissolution, because it vests his share in the partnership in his assignees. There can be no doubt that the same effect would be produced by a voluntary transfer to a stranger; and there is no reason to distinguish it from such a transfer to one or more of the copartners. The partners themselves may order it otherwise by a provision in the articles; or by subsequent agreement; but they may do so on their own terms; and a power to transfer a partner's share to a copartner, as well as to a stranger, must be executed in the manner, and in conformity to the conditions prescribed. Partnerships are sometimes formed in consideration of peculiar qualities attributed to particular members, and the others may be unwilling to carry on the business without them. The fundamental articles in this case prescribe that the original members or their successors may transfer their shares subject to restrictions; that a shareholder shall cease to be a member after transfer; that the company shall keep transfer books; and the persons becoming members of the company by transfer on the books shall be entitled to receive a certificate in a particular form. The plaintiff executed an agreement of transfer, not entered on the books, to two of his copartners; and it presents to him this dilemma: it was either a present transfer which dissolved the partnership, or it was an executory agreement which left it standing in the mean time, but left him standing also a member of it;

[Cochran v. Perry.]

and on the one or the other horn of which he must hang, unless some subsequent act of the defendants has released him from it.

The agreement subsequent to the plaintiff's irregular transfer, by which it was declared that Andrew Cochran owns the shares standing in the name of Richard Cochran, would undoubtedly be a sufficient act of confirmation as to all who executed it, if it were unconditional; but it was also declared that persons having stock standing in the names of others, must forthwith cause the same to be transferred in the books of the company; thus evincing an opinion, well founded in principles of law, that an imperfect trans-fer, though it pass an equitable title to the transferee, introduces no difference into the relations of the partners with each other. But the confirmation was to depend on a condition precedent, which has not been performed.  As no transfer has been shown in the books, the plaintiff remains the ostensible owner of the shares for partnership purposes, and a member of the firm as re-gards the company; in which character he can maintain no action against his copartners but account-render. Even had the confirma-tory clause been unconditional, it would not have entitled him to recover in *assumpsit* against these defendants, inasmuch as one of them (Wilcox) is not a party to it.  He neither executed it nor did any other act to dispense with the original articles ; and as the plaintiff was bound to prove a joint contract by all, he cannot recover against them on the ground either that the original part-nership was continued or a new one formed.

Judgment affirmed.